


SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center
New York, NY 10281-1022
(212) 336-0029

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------
SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

    v.

SMART ONLINE, INC., DENNIS MICHAEL NOURI,
REEZA ERIC NOURI, ANTHONY MARTIN,
JAMES DOOLAN, RUBEN SERRANO, AND
ALAIN LUSTIG,

        Defendants.
------------------------------------------------------------

07 Civ. 7960 (PKC)

**COMPLAINT** ECF CASE

## PRELIMINARY STATEMENT

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against defendants Smart Online, Inc. ("Smart Online"), Dennis Michael Nouri ("Michael Nouri"), Reeza Eric Nouri ("Eric Nouri"), Anthony Martin ("Martin"), James Doolan ("Doolan"), Ruben Serrano ("Serrrano"), and Alain Lustig ("Lustig") (collectively, the "Defendants"), alleges as follows:

    1.    Smart Online stock began trading publicly on the OTC Bulletin Board in April 2005. Defendant Michael Nouri, the CEO of Smart Online, sought to qualify the company for listing on the NASDAQ by increasing the number of shareholders and trading volume of Smart Online stock.

2. In order to do so, Michael Nouri began paying bribes to stock brokers to solicit customers to purchase Smart Online stock. Michael Nouri paid bribes to Individual A, Individual B, and defendants Martin, Doolan, Serrano and Lustig (all brokers at brokerage firms).

3. In total, between May 2005 and January 2006, Michael Nouri paid over $170,000 to brokers who sold more than 267,000 shares of Smart Online stock (or approximately 10% of the trading volume during the period) to investors. Michael Nouri concealed the bribes as "consulting fees" paid pursuant to sham consulting agreements. The brokers did not disclose to their customers that they were receiving bribes to sell Smart Online stock and Michael Nouri understood that this would be concealed from the customers.

4. During the scheme, Eric Nouri also negotiated bribe payments to Individual A and directed Individual A to purchase stock at various amounts and prices.

5. By late 2005, Smart Online had qualified for listing on the NASDAQ. On January 17, 2006, the day that Smart Online was scheduled to begin trading on the NASDAQ, the Commission suspended trading of the stock. Smart Online stock did not trade on the NASDAQ.

6. The Defendants, directly or indirectly, have engaged in transactions, acts, practices and courses of business which constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## JURISDICTION AND VENUE

7. The Commission brings this action pursuant to Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), to enjoin the Defendants from engaging in the acts, practices and courses of business alleged herein. The Commission also seeks a judgment ordering Michael Nouri, Eric Nouri, Martin, Doolan, Serrano, and Lustig to disgorge their ill-gotten gains with prejudgment interest thereon and to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3). In addition, the Commission seeks an order barring Michael Nouri from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. § 78l, or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d). The Commission also seeks such other relief as the Court may deem appropriate.

8. This Court has jurisdiction of this action pursuant to Sections 20(d) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(d) and 77v(a), and Sections 21(d) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa.

9. Venue in this District is proper pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. Certain of the transactions, acts, practices, and courses of business alleged herein occurred within this District. For example, Michael Nouri met with Individual A and Individual B at various locations in New York City to discuss the bribery scheme, and in accordance with the scheme, Martin, Doolan,

Serrano, and Lustig solicited purchases of Smart Online stock from locations within New York City.

## DEFENDANTS

10. **Smart Online**, is a Delaware corporation with its principal office located in Durham, North Carolina. Smart Online provides software services geared to small business owners. Smart Online's stock began trading publicly on April 15, 2005, and until January 13, 2006, was quoted on the OTC-BB. On January 10, 2006, Smart Online announced that it would trade on NASDAQ beginning on January 17, 2006. On January 17, 2006, the Commission suspended trading of Smart Online securities for ten days pursuant to Section 12(k) of the Exchange Act. Since September 11, 2006, Smart Online's stock has been quoted on the OTC-BB. As of June 30, 2007, Smart Online had 17,927,137 shares of common stock outstanding, and its common stock is registered with the Commission pursuant to Section 12(g) of the Exchange Act. Between April 15, 2005 and January 13, 2006, Smart Online traded at prices ranging from $1.50 per share to $11.50 per share.

11. **Michael Nouri**, age 51, is a resident of Durham, North Carolina. Michael Nouri is the co-founder, president and CEO of Smart Online.

12. **Eric Nouri**, age 40, is a resident of Durham, North Carolina. Eric Nouri is Michael Nouri's brother and a Smart Online employee.

13. **Martin**, age 47, is a resident of Jersey City, New Jersey. Between October 2002 and June 2006, Martin worked as a broker for Maxim Group LLC ("Maxim"), a registered broker-dealer located in New York City.

14. **Doolan**, age 47, resides in Bayville, New York. Between October 2002 and July 2006, Doolan worked as a broker for Maxim.

15. **Serrano**, age 53, resides in Jersey City, New Jersey. Since 2003, Serrano has worked as a broker for Maxim.

16. **Lustig**, age 37, resides in Massapequa, New York. Since 2003, Lustig has worked as a broker for Jesup & Lamont Securities Corp., a registered broker-dealer located in New York City.

## FACTS

### A. Michael Nouri Paid Bribes to Brokers

17. From May 2005 through January 2006, Michael Nouri paid a total of at least $170,000 in bribes to Individual A, Individual B and Serrano to create volume in the trading of Smart Online stock. Individual A paid some of these bribes to Martin, Lustig, Doolan and Serrano.

18. During the same period, Individual A, Individual B, Martin, Doolan, Serrano and Lustig solicited purchases of at least 267,000 Smart Online shares (or approximately 10% of the trading volume for that period) from investors without disclosing their bribes.

   i.   **Individual A's Broker Network**

19. In May 2005, Michael Nouri told Individual A that he wanted to increase the daily trading volume of Smart Online stock from approximately 5,000 shares per day to 30,000 shares per day. Michael Nouri explained that because Smart Online did not generate sufficient revenues, the company needed to show an increase in market capitalization to meet NASDAQ's

listing requirements.

20.  Michael Nouri also told Individual A that he wanted to increase the number of Smart Online shareholders to meet NASDAQ's listing requirements, including a minimum of 400 record shareholders.

21.  Michael Nouri asked Individual A to help create volume and increase the number of shareholders of Smart Online by soliciting customer purchases of Smart Online stock. In return, Michael Nouri agreed to pay Individual A $1,000 for every 1,000 shares of Smart Online stock sold by Individual A and the brokers in Individual A's network, including Martin, Doolan, Serrano and Lustig (collectively, "Individual A's Network").

22.  Individual A told Michael Nouri that Individual A would pay approximately one-half of the money he received from Michael Nouri to brokers in Individual A's Network for soliciting customer purchases of Smart Online stock.

23.  To conceal the true nature of the bribery payments, Michael Nouri caused Smart Online to enter into a sham consulting agreement with Individual A's agent.

24.  In early May 2005, Michael Nouri caused Smart Online to pay Individual A a $10,000 bribe as an advance on the first 10,000 Smart Online shares purchased by customers of Individual A and Individual A's Network. During the last week of May 2005, Individual A and Individual A's Network began soliciting purchases of Smart Online stock from their customers. Between May 2005 and January 13, 2006, Michal Nouri caused Smart Online to pay Individual A's agent approximately $115,000.

25.  Between May 2005 and January 13, 2006, Individual A paid Martin, Doolan,

Serrano and Lustig cash for soliciting purchases of Smart Online stock from their customers. During that period, Martin, Doolan, Serrano and Lustig solicited purchases of Smart Online stock from their customers.

26.    Individual A, Martin, Doolan, Serrano and Lustig did not tell their customers that they were being paid bribes to solicit their customers to purchase Smart Online stock.

27.    Eric Nouri also negotiated bribe payments with Individual A. For example, on January 11, 2006, at a meeting in New York City, Eric Nouri discussed with Michael Nouri and Individual A the payment arrangements for the bribes and the fact that Individual A had already received $115,000 in bribes. Eric Nouri also communicated with Individual A about the consulting agreement.

28.    Michael Nouri and Eric Nouri knew, or were reckless in not knowing, that Individual A and Individual A's Network would not disclose to their customers that they had been bribed to solicit purchases of Smart Online stock.

   ii.    **Michael Nouri Paid Bribes to Individual B**

29.    In approximately July 2005, Michael Nouri entered into a separate bribery arrangement with Individual B. Michael Nouri agreed to pay Individual B between $700 and $1,000 for every 1,000 shares of Smart Online stock purchased by Individual B's customers.

30.    As he did with Individual A, Michael Nouri also caused Smart Online to enter into a sham consulting agreement with Individual B to conceal the bribery scheme.

31.    Between July 2005 and December 2005, Michael Nouri caused Smart Online to pay Individual B approximately $35,000 for soliciting Individual B's customers to purchase

7

shares of Smart Online stock.

32.  Individual B did not tell his customers that he was being paid by Michael Nouri to solicit purchases of Smart Online stock.

33.  Michael Nouri knew, or was reckless in not knowing, that Individual B did not disclose to his customers that he was paid bribes to solicit purchases of Smart Online stock.

### iii. Serrano Entered into a Bribery Scheme with Michael Nouri

34.  In July 2005, Michael Nouri entered into a separate bribery scheme with Serrano.

35.  Michael Nouri caused Smart Online to enter into a sham consulting agreement with Serrano to conceal the bribery arrangement.

36.  Between July 2005 and December 2005, Michael Nouri caused Smart Online to pay Serrano approximately $21,000 for soliciting purchases of Smart Online stock from Serrano's customers.

37.  Between July 2005 and December 2005, Serrano solicited purchases of Smart Online stock from his customers. Serrano did not disclose to his customers that he was being paid by Michael Nouri to solicit purchases of Smart Online stock.

38.  Michael Nouri knew, or was reckless in not knowing, that Serrano did not disclose to his customers that he had been bribed to solicit purchases of Smart Online stock.

### B. Michael Nouri and Eric Nouri Directed Trading in Smart Online Stock

39.  Between May 2005 and January 13, 2006, Michael Nouri and Eric Nouri directed trading in Smart Online stock.

40.  For example, Michael Nouri and Eric Nouri contacted Individual A and

Individual B and instructed them to purchase a specific number of Smart Online shares at a specific price. Michael Nouri and Eric Nouri told them to purchase Smart Online stock at the offer price, in an attempt to raise the price of Smart Online stock. Michael Nouri and Eric Nouri often directed them to purchase odd lots of Smart Online stock (i.e., 101 shares, 201 shares, etc.), which allowed Michael Nouri to track more easily the trades as reported by trading services.

41.     To keep Michael Nouri informed of their activities, Individual A and Individual B often communicated their customers' Smart Online stock purchases to Michael Nouri.

**FIRST CLAIM FOR RELIEF**
Violations of Section 17(a) of the Securities Act
(All Defendants)

42.     Paragraphs 1 through 41 are hereby realleged and incorporated by reference.

43.     All Defendants, and each of them, directly and indirectly, singly or in concert, in the offer or sale of Smart Online securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, knowingly or recklessly, have: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, acts, practices and courses of business which operated or would operate as a fraud or deceit upon purchasers of the securities referenced above.

44.     As part of and in furtherance of this violative conduct, all Defendants, and each of them, knowingly or recklessly engaged in some or all of the manipulative and fraudulent transactions, acts, practices, and courses of business described above, including, among other

things, the undisclosed bribery arrangements to create demand in Smart Online stock. These transactions, acts, practices, and courses of business operated as a fraud or deceit upon investors who purchased the securities referenced above.

45. By reason of the foregoing, all of the Defendants, and each of them, have violated, and, unless enjoined, will again violate Sections 17(a) of the Securities Act, 15 U.S.C. §77q(a).

## SECOND CLAIM FOR RELIEF
Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder
(All Defendants)

46. Paragraphs 1 through 45 are hereby realleged and incorporated by reference.

47. All Defendants, directly and indirectly, singly and in concert, by use of the means and instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or recklessly, have: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts or omissions of material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, acts, practices and courses of business which operated or would operate as a fraud or deceit upon purchasers of the securities referenced above.

48. As part of and in furtherance of this violative conduct, all Defendants, and each of them, knowingly or recklessly engaged in some or all of the manipulative and fraudulent transactions, acts, practices, and courses of business described above, including, among other things, the undisclosed bribery arrangements to create demand in Smart Online. These transactions, acts, practices, and courses of business operated as a fraud or deceit upon investors

who purchased the securities referenced above.

49. By reason of the foregoing, all Defendants, and each of them, have violated, and, unless enjoined, will again violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## **RELIEF REQUESTED**

WHEREFORE, the Commission respectfully requests that this Court:

I.

Enter a final judgment of permanent injunction permanently restricting and enjoining the Defendants, and their agents, servants, employees, attorneys, attorneys in fact, and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, from violating, directly or indirectly, Section 17(a) of the Securities Act, 15 U.S.C. §77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5, 17 C.F.R. §§ 240.10b-5.

II.

Enter a Final Judgment ordering Michael Nouri, Eric Nouri, Martin, Doolan, Serrano, and Lustig to disgorge an amount equal to the funds and benefits that they obtained illegally as a result of the violations alleged herein, plus prejudgment interest.

III.

Enter a Final Judgment ordering Michael Nouri, Eric Nouri, Martin, Doolan, Serrano, and Lustig to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

IV.

Enter a Final Judgment pursuant to Section 20(e) of the Securities Act, 15 U.S.C. § 77t(e), and Section 21(d)(2) of the Exchange Act, 15 U.S.C. §78u(d)(2), permanently prohibiting Michael Nouri from serving as an officer or director of any issuer that has a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act, 15 U.S.C. §78l, or that is required to file reports with the Commission pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. §78o(d).

V.

Grant such other and further relief as the Court may deem just and appropriate.

Dated:       September 11, 2007
             New York, New York

_____
SCOTT L. BLACK
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center
New York, New York 10281-1022
(212) 336-0029

Of Counsel:

   Gerald A. Gross
   John P. Nowak
   Sheldon Mui